1
2
3
4
5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6
7
8
9
10
11
12
13

| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, | Case No. 3:19-cv-00709-MMD-CLB |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| KALICKI COLLIER, LLP, *et al.*, | |
| Defendants. | |
| AND ALL RELATED ACTIONS | |

14
**I.    SUMMARY**

15    Plaintiff Alps Property & Casualty Insurance Company sues for a declaration that

16  Lawyers Professional Liability Insurance Policy No. ALPS18622-4 for the policy period

17  January 9, 2019 to January 9, 2020 (the "Policy") does not cover Defendants Kalicki

18  Collier LLP, John A. Collier, and James A. Kalicki (collectively, the "Lawyer Defendants")

19  in Defendant Robin Rumbaugh's suit against them for legal malpractice, along with a

20  declaration of no duty to defend or indemnify, and a declaration that Plaintiff is entitled to

21  reimbursement from the Lawyer Defendants for money Plaintiff expended in defending

22  the Lawyer Defendants in Rumbaugh's suit against them. (ECF No. 2.) While the Court

23  previously dismissed Rumbaugh's cross-claims against the Lawyer Defendants (ECF

24  No. 63), Rumbaugh also asserted a counterclaim against Plaintiff seeking a declaration

25  of her direct or indirect rights in the Policy (ECF No. 10 at 22-25). Before the Court are:

26  (1) Plaintiff's motion for summary judgment on both of its asserted claims (ECF No. 77

27
28

("Motion"));[1] (2) Defendant Collier's motion for leave to file a counter complaint against Plaintiff (ECF No. 80 ("Counter Complaint Motion"));[2] and (3) Plaintiff's motion for leave to file supplemental authorities in support of its Motion (ECF No. 100). As further explained below, the Court will grant the Motion in full primarily because an objectively reasonable lawyer would have known that dismissal with prejudice of a client's case on statute of repose grounds may lead to a malpractice claim, and deny the Counter Complaint Motion because Collier has not shown sufficient diligence. The Court will also grant the motion for leave to file supplemental authorities.

## II.    BACKGROUND[3]

This case arises out of the Lawyer Defendants' representation of Rumbaugh in her capacity as Trustee of the Harley Trusts. (ECF No. 2 at 5.) Rumbaugh was—and is—seeking to recover money that her deceased brother allegedly took from the Harley Trusts before he died, when he was serving as Trustee. (*Id.* at 5-6.) To this end, Rumbaugh retained Kalicki Collier LLP, specifically Kalicki, in February 2015 to have Rumbaugh confirmed as the Trustee, and to recover assets she believed had been taken from the Harley Trusts. (*Id.* at 6.) Rumbaugh met again with Kalicki in March 2015, exchanged correspondence with him, and dropped off several boxes of documents regarding the Harley Trusts. (*Id.* at 6-7.)

///

///

---

[1]Rumbaugh (ECF No. 83) and the Lawyer Defendants (ECF Nos. 89, 90, 90-1) filed responses, and Plaintiff filed replies (ECF Nos. 93, 95). The Lawyer Defendants explained that they inadvertently filed a draft response at ECF No. 89. (ECF No. 90.) Thus, they filed the final draft of their response at ECF No. 90-1. (ECF No. 90.) The Court considered the final draft (ECF No. 90-1) in analyzing the Motion, and will cite to that version herein.

[2]Plaintiff filed a response (ECF No. 82), and Collier filed a reply (ECF No. 91). In his reply, Collier dropped his request for "leave to amend the scheduling order to extend the expert disclosure deadlines in his motion." (*Id.* at 2.) Thus, only Collier's request for leave to amend the scheduling order to file a counter complaint against Plaintiff remains.

[3]The following facts are undisputed unless otherwise noted.

On August 31, 2015, Kalicki Collier LLP filed a petition in state court, in Washoe County, Nevada, to have Rumbaugh confirmed as the trustee of the Harley Trusts. (*Id.* at 7.)

In October 2015, Kalicki Collier LLP filed a notice to withdraw the petition filed in August because they filed it in the wrong county, and filed a new petition in Nevada state court in Carson City to have Rumbaugh confirmed as the trustee of the Harley Trusts. (*Id.* at 7-8.)

The state court in Carson City confirmed Rumbaugh as trustee of the Harley Trusts in November 2015. (*Id.* at 8.)

In October 2016, or nearly a year later, Kalicki began circulating a draft settlement agreement with Cynthia Harley (Rumbaugh's deceased brother's wife) under which Cynthia Harley would return a house and cash worth approximately a million dollars to the Harley Trusts that Rumbaugh's deceased brother had taken from the Harley Trusts. (*Id.* at 8.)

In November 2016, Kalicki wrote Rumbaugh an email in which he explained that he was too busy to continue working on her matters, and informed her that his law partner Collier would work with her and Cynthia Harley's counsel to finalize the proposed settlement agreement. (*Id.* at 8.)

On February 16, 2017, Collier told Rumbaugh that Cynthia Harley was advised by her counsel not to sign the proposed settlement agreement because the applicable statute of repose, California Code of Civil Procedure § 366.2(a) ("Section 366.2(a)") barred any claim for recovery of Harley Trusts' assets. (*Id.* at 9.) Rumbaugh alleges the Section 366.2(a) repose period ran on October 15, 2015, or about eight months after Kalicki began representing her. (*Id.* at 8-9.) Rumbaugh also alleges the February 16, 2017 phone call with Collier is the first time anyone from Kalicki Collier LLP told her there may be a statue of repose issue preventing her from recovering trust assets. (*Id.* at 9.)

In emails sent in March 2017, Collier confirmed to Rumbaugh that Cynthia Harley would not sign the proposed settlement agreement, and stated that Section 366.2(a)

may be a complete bar to her claims against her deceased brother, though he still thought it was possible to bring claims against Cynthia Harley. (*Id.* at 10.)

In April 2017, Collier filed a petition in the state court case already pending in Carson City in an attempt to recover Harley Trusts' assets from Cynthia Harley. (*Id.*)

In June 2017, Cynthia Harley filed a motion to dismiss the petition for lack of subject matter and personal jurisdiction, and filed a motion to continue trial in which she asserted Section 366.2(a) barred Rumbaugh's claims. (*Id.* at 11-12.)

In July 2017, the state court in Carson City dismissed Rumbaugh's petition against Cynthia Harley for lack of personal jurisdiction over Cynthia Harley and subject matter jurisdiction over the Harley Trusts, both of which are based in California. (*Id.* at 12.)

In September 2017, Collier filed a new case against Cynthia Harley to recover Harley Trusts' assets in federal court, in the Eastern District of California. (*Id.*)

In December 2017, Cynthia Harley filed a motion to dismiss the federal case, arguing Rumbaugh's claims against her were barred by Section 366.2(a). (*Id.* at 13.)

In August 2018, the Eastern District of California granted Cynthia Harley's motion to dismiss Rumbaugh's claims, agreeing they were barred by Section 366.2(a). The Eastern District of California dismissed some of Rumbaugh's claims with prejudice, and others without prejudice, though it noted in its dismissal order that the court was skeptical Rumbaugh could sufficiently amend her claims to survive another motion to dismiss based on Section 366.2(a). (*Id.* at 13-14.)

In September 2018, Collier filed an amended complaint on Rumbaugh's behalf in the federal case. (*Id.* at 14.)

In October 2018, Cynthia Harley filed another motion to dismiss Rumbaugh's claims in her amended complaint based on Section 366.2(a). (*Id.*)

///

///

4

In July 2019, the Eastern District of California dismissed Rumbaugh's amended complaint with prejudice, finding that all of her claims against Cynthia Harley were barred by Section 366.2(a). (*Id.* at 15.)

In August 2019, another attorney, Michael D. Hoy, sent a letter to the Lawyer Defendants on Rumbaugh's behalf, announcing Rumbaugh's intention to sue them for malpractice if they could not come to an agreement. (*Id.* at 15-16.) Within two days of receiving that letter, the Lawyer Defendants sent Plaintiff notice of Rumbaugh's malpractice claim against them. (*Id.* at 16.)

While all of the above was occurring, the Lawyer Defendants completed two applications for malpractice insurance with Plaintiff, where the second application, completed in approximately December 2018, led to the Policy. (*Id.* at 20-23.) Both Kalicki and Collier are listed as named insureds on the Policy. (*Id.* at 23.) In the application that led to the Policy, the Lawyer Defendants responded 'no' to questions asking them whether they were aware of any errors or omissions that could reasonably be expected to be the basis of a claim against any member of Kalicki Collier LLP. (*Id.* at 21-23.) The application leading to the Policy also stated that any claim arising from an error or omission that should have been disclosed in response to the claim history section of the application will be excluded from coverage under the Policy. (*Id.* at 23.) The Policy is a claims made and reported policy covering the period January 9, 2019 to January 9, 2020. (*Id.*) The provisions of the Policy particularly important to this case (*id.* at 23-26) are discussed in more detail *infra* in Section IV.3.

Beginning in the fall of 2019, and continuing to the present, Plaintiff provided representation to the Lawyer Defendants regarding Rumbaugh's malpractice claims against them under a full reservation of rights. (*Id.* at 26-27.)

**IV.  DISCUSSION**

The Court first addresses Plaintiff's Motion, then Collier's Counter Complaint Motion, and then the impact of this order on the claims in this case, concluding this order resolves this case in Plaintiff's favor.

### A.    Plaintiff's Motion

As to Plaintiff's Motion, the Court first addresses Plaintiff's motion for leave to file supplemental authority in support of its Motion, then describes the legal standard governing its review of Plaintiff's Motion, and then addresses the Motion's merits, with the Court's analysis organized to map to Plaintiff's two claims in this case.

### 1.    Motion for Leave to File Supplemental Authority

Six months after filing its Motion, Plaintiff filed a motion for leave to file supplemental authority in support of that Motion, specifically, two recent orders from federal district courts in North Dakota and Nebraska where Plaintiff prevailed at summary judgment on similar arguments to those it makes here. (ECF No. 100; *see also* 101 (refiling the same motion with the exhibits).) No Defendants filed responses to Plaintiff's motion for leave to file supplemental authority.

"LR 7–2(g) requires parties to acquire leave of court before filing supplemental briefs." *Ra Se. Land Co. LLC v. First Am. Title Ins. Co.*, Case No. 2:14-cv-01621-MMD-NJK, 2016 WL 4591740, at *2 (D. Nev. Sept. 2, 2016). "A court may grant such a request for good cause." *Id.* Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful. *See Hunt v. Washoe Cty. Sch. Dist.*, Case No. 3:18-cv-00501-LRH-WGC, 2019 WL 4262510, at *3 (D. Nev. Sept. 9, 2019).

To start, Plaintiff complied with LR 7-2(g) by filing a motion for leave to file supplemental authorities instead of simply filing a notice of supplemental authorities or similar document. Further, the Court finds good cause exists to grant the motion. Defendants did not file any responses indicating they oppose the motion. And while Plaintiff's proffered authorities are of course out-of-circuit and applying the substantive law of other states, the Court nonetheless finds them particularly persuasive and helpful because they also involve Plaintiff, address the same policy provisions at issue here, under similar factual circumstances, and in the same procedural posture. (ECF No. 100

at 3 (proffering *ALPS Prop. & Cas. Ins. Co. v. Bredahl & Assocs., P.C., et al.*, Case No. 3:19-cv-00195, 2020 WL 6268043 (D.N.D. Oct. 23, 2020), *appeal docketed*, No. 20-3432 (8th Cir. Nov. 20, 2020) ("*Bredahl*"); *Roberts v. ALPS Prop. & Cas. Ins. Co.*, Case No. 8:19-cv-00532, ECF No. 29 (D. Neb. Nov. 23, 2020) ("*Roberts*").) The Court considered these decisions in ruling on Plaintiff's Motion.

## 2.    Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for

trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

### 3. Coverage

Plaintiff argues the Policy does not cover the Lawyer Defendants as to Rumbaugh's suit against them because they should have known at the time they applied for the Policy that letting the applicable statute of repose run without a good reason might lead Rumbaugh to sue them for malpractice. (ECF No. 77 at 21-29.) The Lawyer Defendants counter that Plaintiff has not met its burden of proof to establish that either of Plaintiff's proffered exclusions apply, the Lawyer Defendants complied with pertinent Policy provisions, rendering Plaintiff's argument that exclusions apply unpersuasive, and Plaintiff's reliance on the Lawyer Defendants' responses to the Policy application is misleading because Plaintiff is not rescinding the Policy. (ECF No. 90-1 at 14-27.) Rumbaugh counters Plaintiff's Motion by arguing Plaintiff fails to apply the notice-prejudice rule, has not shown prejudice, and misinterprets its own Policy. (ECF No. 83 at 7-23.) The Court agrees with Plaintiff.

The Parties—and the Court—all agree that Nevada law applies to the Court's interpretation of the Policy. (ECF Nos. 77 at 19 n.7, 83 at 7-8, 90-1 at 12-13.) *See also Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1084 (D. Nev. 1999). In Nevada, "[a]n insurance contract's interpretation, including whether it is ambiguous, is a matter of law." *Probuilders Specialty Ins. Co. v. Double M. Const.*, 116 F. Supp. 3d 1173, 1178 (D. Nev. 2015) (citation omitted). The Court must interpret the Policy in line with its plain language if it is unambiguous. *See Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614,

616 (Nev. 2014). "An insurance policy is considered ambiguous if 'it creates [multiple] reasonable expectations of coverage as drafted.'" *Id.* (citation omitted). Where, as here, an insurer seeks to preclude coverage under an exclusion, Plaintiff must: "(1) draft the exclusion in 'obvious and unambiguous language,' (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion plainly applies to the particular case before the court." *Id.* (citation omitted).

Plaintiff has established that its two proffered, unambiguous exclusions contained in the Policy apply to the undisputed facts of this case. As Plaintiff explains (ECF No. 77 at 21), the Policy only provides coverage if "[a]t the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim[.]" (ECF No. 2-3 at 11 (§ 1.A.2).) Wrongful Act is defined as "an actual or alleged: (1) Act, error, or omission in Professional Services that were or should have been rendered by the insured; or (2) a Personal Injury resulting from the Professional Services of the Insured." (*Id.* at 17 (emphasis omitted, where capitalization indicates further defined terms).) Claim, subject to certain exceptions not relevant here, "means a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured." (*Id.* at 12.) Moreover, and alternatively, Plaintiff further argues the Policy does not provide coverage for any Wrongful Act that occurred prior to its January 9, 2019 effective date if (ECF No. 77 at 21):

> Prior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(ECF No. 2-3 at 17 (§ 3.E.3).)

Plaintiff relies on either—or both—of these exclusions to argue Rumbaugh's malpractice suit against the Lawyer Defendants is not covered by the Policy because the

1   Lawyer Defendants missing the applicable statute of repose and then having a case filed

2   on Rumbaugh's behalf dismissed on those grounds constituted a Wrongful Act that they

3   either knew or should have known would turn into a Claim before the effective date of

4   the Policy. (ECF No. 77 at 21-29.) The Court agrees. More specifically, it is undisputed

5   that Kalicki let Section 366.2(a) lapse about eight months after he agreed to represent

6   Rumbaugh, and then he handed the case off to Collier. (*Id.* at 25.) After he took over

7   Rumbaugh's case, opposing counsel informed Collier that his client would not enter into

8   a settlement agreement with Rumbaugh because Section 366.2(a) barred Rumbaugh's

9   claims against Cynthia Harley, and Collier passed this information on to Rumbaugh,

10  indicating it was likely Section 366.2(a) barred her claim. (*Id.* at 25-26.) But Collier

11  nonetheless pursued claims on Rumbaugh's behalf, which a federal court in California

12  dismissed in August 2018 based on Section 366.2(a), noting it was unlikely Rumbaugh

13  could sufficiently amend her claims to avoid dismissal again. (*Id.* at 26-27.) Indeed,

14  Rumbaugh's claims were later dismissed with prejudice. (ECF No. 2 at 15.) This all

15  happened before the Policy's effective date. (ECF No. 77 at 15, 25-27.) These

16  undisputed facts show the Lawyer Defendants reasonably should have known

17  Rumbaugh may bring a malpractice claim against them, bringing this case within

18  Plaintiff's proffered exclusions.[4]

19

20  [4]The Lawyer Defendants proffer a declaration from Jason Morris, Esq. to support
the proposition that, "[b]ased on common custom and practice in the industry, a death of
21  a trustee has no legal effect on the character of the assets and a death of the trustee
does not change the character of the trust assets." (ECF No. 90-1 at 7 (relying on ECF
22  No. 90-3).) The Lawyer Defendants use this evidence to make the argument that the
Lawyer Defendants could not have objectively foreseen a potential malpractice suit.
23  (ECF No. 90-1 at 22.) But the Morris declaration does not create a material dispute of
fact because it does not contradict the fact the Eastern District of California twice
24  dismissed Rumbaugh's claims brought by the Lawyer Defendants based on Section
366.2(a), once before the effective date of the Policy. The fact of the September 2018
25  dismissal Rumbaugh was ultimately unable to recover from—not the Lawyer Defendants'
beliefs about whether that dismissal was correct—is what should have put them on
26  notice a malpractice claim might be coming. *See Colony Ins. Co. v. Kuehn*, Case No.
2:10-cv-01943-KJD, 2012 WL 4472038, at *4 (D. Nev. Sept. 25, 2012) ("Where attorney
27  errors led to dismissal of a client's claims, courts may enter summary judgment on the
issue of reasonable expectation of a claim.").

28

1   Further, Defendants do not dispute any of these facts. (ECF No. 83 (containing no

2   statement of facts), 90-1 at 4-11 (presenting facts that do not materially differ from the

3   facts as described *supra* in Section II).) Instead, they make several unreasonable

4   interpretive arguments and unpersuasive legal arguments. The Court addresses and

5   rejects these arguments below.

6   The Lawyer Defendants first argue Plaintiff's interpretation of the Policy

7   exclusions is too broad, and would allow Plaintiff "to deny coverage each and every time

8   an attorney fails to provide it with notice of an arguable breach of professional services."

9   (ECF No. 90-1 at 14-15.) But that argument fails to address either the facts of this case

10  or Plaintiff's interpretation of the Policy's exclusions as applied to these facts. The

11  Lawyer Defendants received multiple, undisputed indications that the initial statute of

12  repose mistake was a determinative issue adverse to Rumbaugh that they could not

13  avoid. Moreover, as Plaintiff argues (ECF No. 95 at 9-10), other courts, including most

14  notably one within this circuit, have stated that missing a statute of limitations deadline

15  would put a reasonable attorney on notice of a potential malpractice claim. *See*

16  *Weddington v. United Nat. Ins. Co.*, Case No. C 07-1733 SBA, 2008 WL 590512, at *6

17  (N.D. Cal. Feb. 29, 2008), *aff'd*, 346 F. App'x 224 (9th Cir. 2009).[5] The Court agrees that

18  a statute of limitations (or repose, as is the case here) mistake fatal to a client's case

19  puts a reasonable lawyer on notice they may face a malpractice claim. *See, e.g.*,

20  *Chicago Ins. Co. v. Paulson & Nace, PLLC*, 37 F. Supp. 3d 281, 294 (D.D.C.

21  2014), *aff'd*, 783 F.3d 897 (D.C. Cir. 2015) ("the attorney defendants had a 'reasonable

22  basis to believe' that they had 'breached a professional duty' to [their client] no later than

23  June 18, 2007, when the Virginia judge dismissed her medical malpractice claims with

24  prejudice" because their error cause the statute of limitations to run) (citation omitted).

25

26  [5]That said, *Weddington* dealt with failure to prosecute. *See generally Weddington*,
    2008 WL 590512. In affirming the district court, the Ninth Circuit wrote that "Failure to

27  bring an action to trial within five years is the sort of incident likely to give rise to a claim
    for the reasons set forth in the district court's order." *Weddington v. United Nat. Ins. Co.*,

28  346 F. App'x 224, 227 (9th Cir. 2009).

The Lawyer Defendants next argue Plaintiff's proffered Policy exclusions do not apply here because Claim, as defined in the policy, requires that legal proceedings have already been instituted. (ECF No. 90-1 at 15-16.) But this argument is rendered unpersuasive by the plain language of the Policy. (ECF No. 2-3 at 12 (defining that Claim, subject to certain exceptions not relevant here, "means a demand for money or services *including, but not necessarily limited to*, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured.") (emphasis added).) In any event, Plaintiff's argument is beside the point because Plaintiff's arguments turn on Wrongful Act, not Claim. (ECF Nos. 77 at 21, 95 at 3.) Plaintiff's argument is that any reasonable attorney would have been on notice a potential malpractice claim may be coming at any of the several moments it became clear the statute of repose issue was fatal to Rumbaugh's claims regarding the Harley Trusts before the effective date of the Policy. (ECF No. 77 at 27.)

The Lawyer Defendants' remaining arguments similarly fail to grapple with this straightforward and persuasive argument. Moreover, in attempting to limit Claim, Potential Claim, and the prior knowledge exclusion in the Policy to a demand letter threatening a lawsuit or the actual filing of a lawsuit—and their related arguments that those terms are ambiguous—the Lawyer Defendants attempt to re-write the Policy in a way unreasonably favorable to them. But the Court cannot do that. *See Christensen v. Darwin Nat. Assur. Co.*, Case No. 2:13-cv-00956-APG, 2014 WL 1628133, at *4 (D. Nev. Apr. 14, 2014), *aff'd*, 645 F. App'x 533 (9th Cir. 2016) ("Where the provisions of a policy are clear and unambiguous, the Court must enforce them as written."). Plaintiff's proffered, unambiguous exclusions preclude coverage here. (ECF No. 2-3 at 11, 17.) The Court therefore rejects the Lawyer Defendants' remaining arguments. *See Christensen*, 2014 WL 1628133, at *4-*6 (granting summary judgment to defendant insurance company).

More generally, while both the Lawyer Defendants and Rumbaugh argue against the 'subjective-objective' framework that Plaintiff argues applies here, the Court agrees

12

1   with Plaintiff that framework applies. (ECF No. 77 at 21-23.) As Judge Dawson found in

2   a case in this district proffered by Plaintiff in reply but not addressed by Defendants (ECF

3   Nos. 83, 90-1, 93, 95),[6] courts will enforce a prior-knowledge exclusion like one of the

4   exclusions Plaintiff proffers here: "(1) if the insured had knowledge of the relevant suit,

5   act, error, or omission and (2) if the suit, act, error, or omission might reasonably be

6   expected to result in a claim or suit." *Kuehn*, 2012 WL 4472038, at *4 (citing

7   *Weddington*, 2008 WL 590512, at *5). "The exclusion applies regardless of whether the

8   insured actually formed an expectation of a claim, if a reasonable 'professional in the

9   insured's position might expect a claim or suit to result." *Id.* (citations omitted). "Where

10  attorney errors led to dismissal of a client's claims, courts may enter summary judgment

11  on the issue of reasonable expectation of a claim." *Id.* (citations omitted). Like Judge

12  Dawson—even if he did not explicitly use the phrase subjective-objective framework—

13  the Court finds the subjective-objective framework applies here.

14       The application of the subjective-objective framework to the facts of this case

15  further compels the conclusion that the Policy does not cover Rumbaugh's suit against

16  the Lawyer Defendants. First, as described *supra* in Section II, the undisputed facts

17  show that both Kalicki and Collier knew about the statute of response issue, and that it

18  was likely fatal to Rumbaugh's case, before they completed the Policy application.

19  Second, as also discussed *supra*, a reasonable attorney would have known the statute

20  of repose issue might result in a malpractice lawsuit like the one Rumbaugh eventually

21  filed. *See Kuehn*, 2012 WL 4472038, at *4 (explaining these are the two elements).

22  There is also no real dispute that the Lawyer Defendants' error led to the dismissal of

23  Rumbaugh's claims—more than once. *See id.* The Court therefore finds it appropriate to

24  grant Plaintiff's Motion as to coverage. *See id.*; *see also Weddington*, 2008 WL 590512,

25  at *8 (granting summary judgment to defendant insurance company).

26  _____

27       [6]The fact that Defendants did not address *Kuehn* is immaterial. *See Hunt*, 2019
    WL 4262510, at *3 ("the court must comply with the law regardless of whether the
28  parties cited to such law in the briefing.") (citation omitted).

However, before moving on to reimbursement, the Court will address two of Rumbaugh's ultimately unpersuasive arguments raised in response to the Motion. Specifically, while Rumbaugh argues the notice-prejudice rule applies here (and makes other dependent arguments), the Court disagrees. (ECF No. 83 at 5-15.) The Policy is a claims made and reported policy. (ECF No. 2-3 at 2, 10.) It says so several times in large capital letters. (*Id.*) While the notice-prejudice rule applies to occurrence policies, *see Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 965 (Nev. 2011), it does not clearly apply to claims made and reported policies such as the Policy. *See Physicians Ins. Co. of Wisconsin v. Williams*, 279 P.3d 174, 178 n.4 (Nev. 2012) (declining to reach the question but indicating through its chosen citations that the Nevada Supreme Court would be unlikely to hold that the notice-prejudice rule applies to claims made and reported policies); *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1425 (9th Cir. 1991) (affirming the district court's holding "that the notice-prejudice rule does not apply to a claims-made policy in California"); *W. Edna Assocs., Ltd. v. Twin City Fire Ins. Co.*, Case No. 2:19-cv-00607-GMN-BNW, 2020 WL 1308327, at *9 (D. Nev. Mar. 18, 2020) ("the Nevada Supreme Court has not reached the question of whether the notice-prejudice rule extends to claims made and reported policies."); *Cox v. Liberty Ins. Underwriters, Inc.*, 773 F. App'x 931, 932 (9th Cir. 2019) (affirming the district court's holding that the notice-prejudice rule did not apply to a claims made and reported policy). The Court therefore declines to apply the notice-prejudice rule to the Policy.

Second, Rumbaugh argues that Plaintiff's proffered interpretation of the Policy is impermissible under NAC 686A.660(4). (ECF No. 83 at 16-17.) However, NAC 686A.660(4) contains the carve-out, "except where there is a time limit specified in the insurance contract or policy[.]" The Policy specifies time limits. (ECF No. 2-3 at 2 (explaining the policy is a claims made and reported policy that only covers claims made and reported during the effective policy period), 10 (same), 20-25 (specifying additional time limits).) Thus, the Policy does not appear to violate NAC 686A.660(4). Moreover,

1   Rumbaugh proffers no binding caselaw in support of her argument. (ECF No. 83 at 16-

2   17.) The Court also rejects Rumbaugh's argument based on NAC 686A.660(4).

3       In sum, Plaintiff is entitled to summary judgment on its first claim for a declaration

4   that the Policy does not afford coverage to the Lawyer Defendants.

5   **4.   Reimbursement**

6       Plaintiff argues it is also entitled to summary judgment on its reimbursement claim

7   because the Policy expressly provides for a right of reimbursement for money Plaintiff

8   spends defending a non-covered claim, and Plaintiff sought reimbursement in its

9   Complaint. (ECF No. 77 at 29-30.) The Lawyer Defendants primarily argue Plaintiff is not

10  entitled to reimbursement because Plaintiff is only entitled to reimbursement for

11  defending a claim that it has no legal duty to defend.[7] (ECF No. 90-1 at 27-28.) Because

12  the Lawyer Defendants' reimbursement argument rises and falls with their coverage

13  arguments the Court rejected *supra*, and because the Court otherwise agrees with

14  Plaintiff's reading of its own Policy, the Court agrees with Plaintiff.

15      "The right to reimbursement does not arise unless there is an understanding

16  between the parties that the insured would be required to reimburse the insurer for

17  monies expended in providing a defense." *Blazer*, 51 F. Supp. 2d at 1090 (denying the

18  insurance company's request for reimbursement because it presented no evidence of

19  the existence of such an understanding). Plaintiff has proffered evidence of such an

20  understanding here—the Policy. (ECF No. 77 at 29-30.) The Policy provides that Plaintiff

21  has a right to seek reimbursement of any amount it pays to defend an insured against

22  any non-covered claim. (ECF No. 2-3 at 11 (§ 1.B.2).) Plaintiff also explicitly sought

23  reimbursement in its Complaint. (ECF No. 2 at 34-36.) Further, the Lawyer Defendants'

24  argument effectively concedes that Plaintiff is entitled to reimbursement if Plaintiff

25  prevails on coverage. (ECF No. 90-1 at 27-28.) Because the Court found *supra* that

26  Rumbaugh's claims against Lawyer Defendants are not covered by the Policy, the Policy

27

28      [7]Rumbaugh does not respond to the reimbursement portion of Plaintiff's Motion.

15

1  provides for reimbursement. (ECF No. 2-3 at 11 (§ 1.B.2).) Thus, the Court will also
2  grant Plaintiff's Motion as to reimbursement.

### B.    Collier's Counter Complaint Motion

Collier seeks untimely leave to file a counter complaint against Plaintiff. (ECF No. 80.) The operative scheduling order gave the parties until May 24, 2020 to amend pleadings or add parties, and Collier filed his motion on July 20, 2020. (ECF Nos. 62 at 3, 80.) The Court first describes the legal standard governing its review of Collier's Counter Complaint Motion, and then explains in more detail why it will deny his motion.

### 1.    Legal Standard

Because Collier is seeking leave to file a counter complaint against Plaintiff after the Court entered a scheduling order, and after the deadline to amend pleadings or add parties expired on May 24, 2020 (ECF No. 62 at 3), Federal Rule of Civil Procedure 16(b)(4)'s "good cause" standard for modifying a scheduling order applies, not Rule 15(a)(2)'s more lenient amendment standard.[8] The 'good cause' standard of Rule 16(b) "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). While the Court may consider prejudice to the nonmoving party as an additional reason to deny a motion, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no good reason for a grant of relief.... If [a] party was not diligent, the inquiry should end." *Id.* (citations omitted); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) ("As in *Johnson*, the Plaintiffs here have failed to demonstrate good cause for their untimely motion to amend, and thus, the district court did not abuse its discretion in denying that motion.").

///

---

[8]Collier relies on the wrong standard. (ECF No. 80 at 7-8.)

### 2.      Analysis

Collier was not diligent in seeking the Court's leave to file a counter complaint. The Court will therefore deny the Counter Complaint Motion. *See Johnson*, 975 F.2d at 609 (stating the inquiry should end after a court determines the moving party was not diligent).

Collier proffers two reasons why he was diligent. Collier first argues that his ability to seek leave to file a counter complaint was impacted by the extraordinary circumstances created by the COVID-19 pandemic, particularly the shelter-in-place orders that went into effect in late March 2020. (ECF No. 80 at 5.) Second, he argues he was diligent in seeking leave to file a counter complaint once he received Plaintiff's Motion. (*Id.*) Neither of these proffered reasons persuasively shows diligence.

Collier appears to seek leave to file a counter complaint to assert claims against Plaintiff for including Collier in this case. (ECF No. 80 at 5-10.) But Collier was named as a Defendant in this case from its inception on November 27, 2019. (ECF No. 2.) And the Complaint contains numerous factual allegations against Collier. (*Id.*) If Collier wished to assert counterclaims against Plaintiff based on his inclusion in this case, he could have asserted them as early as the end of November 2019—but did not. In other words, the Complaint, and not Plaintiff's Motion, reasonably put Collier on notice for the first time that he was a defendant in this case. Moreover, Collier does not even attempt to explain what prevented him from filing or seeking leave to file a counter complaint between the end of November 2019 and the end of March 2020, when he says the shelter-in-place orders issued in response to the COVID-19 pandemic affected his ability to do so. Further, Collier stipulated to amend the scheduling order (ECF No. 61), setting the May 24, 2020 deadline to amend pleadings once adopted by the Court (ECF No. 62), on April 3, 2020 (ECF No. 61)—or after the shelter-in-place orders that purportedly affected his counsel's productivity went into effect (ECF No. 80 at 5). Collier then proceeded to miss the deadline he agreed to by about another two months. (ECF Nos. 61, 80.) Collier was

1   not diligent in seeking leave to file a counter complaint against Plaintiff. Collier's Counter

2   Complaint Motion is therefore denied.

3         ### C.     Other Claims

4         As noted, the Court previously dismissed Rumbaugh's crossclaims against the

5   Lawyer Defendants. (ECF No. 63.) And as explained *supra*, the Court finds Plaintiff

6   entitled to summary judgment on both of its claims, meaning there is no coverage for

7   Lawyer Defendants under the Policy for Rumbaugh's suit against them, and the Lawyer

8   Defendants must reimburse Plaintiff for the money Plaintiff spends providing a defense

9   in Rumbaugh's suit against the Lawyer Defendants. The Court must also therefore direct

10  entry of judgment in Plaintiff's favor on Rumbaugh's crossclaim, because she has no

11  rights, direct or indirect, created by the Policy. As the Policy does not cover the Lawyer

12  Defendants as applicable here, it cannot provide any benefit to Rumbaugh.

13  ## V.     CONCLUSION

14        The Court notes that the parties made several arguments and cited to several

15  cases not discussed above. The Court has reviewed these arguments and cases and

16  determines that they do not warrant discussion as they do not affect the outcome of the

17  motions before the Court.

18        It is therefore ordered that Plaintiff's motion for summary judgment (ECF No. 77)

19  is granted. As further explained herein: (1) the Policy does not cover Defendants John A.

20  Collier, James A. Kalicki, or Kalicki Collier, LLP as to Rumbaugh's suit against Lawyer

21  Defendants; (2) Plaintiff has no duty to defend or indemnify these Defendants under the

22  Policy with respect to Rumbaugh's suit against Lawyer Defendants; and (3) Plaintiff is

23  entitled to reimbursement of the fees and costs Plaintiff has paid to defend the Lawyer

24  Defendants in Rumbaugh's suit against them.

25        It is further ordered that Defendant John A. Collier's motion for leave to file a

26  counter complaint against Plaintiff (ECF No. 80) is denied.

27        It is further ordered that Plaintiff's motion for leave to file supplemental authorities

28  (ECF No. 100) is granted.

The Clerk of Court is directed to enter judgment accordingly, in Plaintiff's favor, including on Defendant and Counter Claimant Robin Rumbaugh's counterclaim against Plaintiff, and close this case.

DATED THIS 17th Day of March 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

19